HARDY, Judge.
This is an action by plaintiff, doing -business as Victory Cab Company, in the City of Monroe, Ouachita Parish, Louisiana, and his insurer, American Insurance Company, for the .recovery of damages sustained by one of his cabs in a collision with a car driven by the minor son of the defendant, Daniel E. Bivins, Jr. Factory Mutual Liability Insurance Company, as insurer of the said Bivins, was joined as a party defendant. After trial there was judgment in favor of- defendant rejecting plaintiff’s demands, from which plaintiff prosecutes this appeal.
The accident occurred about or shortly after the hour of 5:00 o’clock P. M. on April 17, 1950, near the intersection of Breard and North Third Streets in the City of Monroe. Plaintiff’s cab, driven at the time by his employee, Winfred B. Sims, was proceeding East on Breard Street. The driver testified that he came to a complete stop at the intersection of North Third Street, which' is, by ordinance, a favored thoroughfare, and after making careful *299 observation in both directions proceeded to turn south on North Third Street. Before the turn had been entirely completed the cab was struck practically head-on by a Mercury automobile driven by one Daniel E. Bivins, III, a seventeen-year old youth, who was accompanied at the time by his sixteen-year old brother, John. Plaintiff alleged that the sole and proximate cause of the accident was the gross negligence of young Bivins. This is denied by defendants, who make counter charges of gross and reckless negligence against Sims and alternatively plead contributory negligence on the part of said Sims.
The facts established on trial are unusually free from contradiction save in one or two instances. Sims’ testimony that he came to a complete stop before making the turn into North Third Street is contradicted by young John Bivins, who testified that he could see the taxi entering the intersection and that it did not come to a stop. The speed of the Mercury automobile is a matter of dispute between the two Bivins youths and Sims. The density of the rain which was falling at the time is also disputed by the principal witnesses.
However, the following facts, in • our opinion, are quite thoroughly established. The taxi had turned from Breard into the west side of North Third Street when it was struck by the Mercury automobile, which was moving north and unquestionably was on the wrong side of the street, that is, the west side thereof. It is clear that the view of the taxi driver in making his turn from Breard Street was obstructed in a southerly direction by a number of cars which were parked along the west side of North Third Street. But it is also quite clear that the taxi was entirely on its own side of the street and was moving very slowly within limits of five to fifteen miles per hour, as testified by several of the witnesses. It is further established that the force of the collision knocked the taxicab back into the intersection and around to the south curb of Breard Street where it came to rest in a position which was practically perfect parking against the curb. The Mercury came to a stop within a few feet of the point of impact.
We think the significant and decisive fact is that without question the Bivins vehicle was in motion on the wrong side of the street. Though the estimates of the point of impact vary, it is fixed as having occurred at not less than fifteen nor more than sixty feet south of the intersection.
The driver of the Bivins’ car explains his position on the wrong side of the street by saying that he had pulled out in the effort to obtain a view to the north prior to passing a truck which was immediately ahead. This being so, it is strange that he did not observe the taxicab until almost the instant of the collision, at which time it was impossible for him to avoid the accident. John Bivins, brother of the driver, testified that although he saw the taxi making the turn he did not warn his brother of its approach.
An ordinance of the City of Monroe prohibits the passing of a vehicle within seventy-five feet of an intersection. Certainly young Bivins was in gross violation of this ordinance. Although he had not actually begun to pass the preceding vehicle it necessarily follows, both in contemplation of the ordinance and the consideration of the facts, that the driver of the Bivins’ car was guilty of gross negligence, which is only enhanced by the fact of the weather conditions which would have indicated the necessity of unusual care. In short, Bivins was driving on the wrong side of a street, preparing to pass a preceding vehicle in violation of a municipal ordinance, without properly observing approaching traffic, and without having his car under control.
It is next necessary to consider the question of negligence, vel non, of Sims, the taxi driver. We do not think it essential to determine the contradicted fact as to whether Sims brought his taxi to a complete stop, though we are inclined to accredit 'his testimony on this point. The only conflict results from the testimony of John Bivins, who could easily have been in error and who, in all probability, could not accurately observe the movements of the vehicle at the point where Sims testified he had stopped. However this may be, certainly Sims was moving slowly and *300 cautiously. According to his frank admission Sims could not make observation of approaching traffic from the south because of the parked cars. Nonetheless, we do not think he was under any compulsion, either of law or safety rules, to do anything except to proceed slowly into the intersection, which is exactly what he did. He had no reason to presume that traffic would be approaching on the wrong side of the street. The taxicab was knocked back for a distance of 20 to 22 feet around the corner of the intersection. This circumstance would indicate that the collision occurred at the point and under the circumstances narrated by Sims. The taxi driver further testified that his car was still in low gear, which fact was corroborated by the plaintiff, Peterson, who reached the scene of the accident shortly after its occurrence, and which fact is not controverted by any other witness.
Under this conception of the facts we think that Sims should be exonerated of any charge of negligence, and it therefore follows that we must hold that the accident resulted from the negligence of the driver of the Bivins’ car, and that such negligence was the sole and proximate cause of the accident.
It is noted that our worthy colleague of this court, who was the trial Judge in the case under consideration, primarily attributed the accident to what he considered to be negligence on the part of Sims in failing to obtain a clear view of North Third Street as might have been required for a safe entry and turn. For the reasons which we have stated above, we do not think this action of Sims was evidence of negligence.
Regretfully, under our evaluation of the testimony as to the facts, we are forced to the conclusion that the judgment appealed from is manifestly in error.
There is no dispute as to the amount of damages sustained by plaintiff’s taxicab, which, is fixed in the sum of $339.64.
For the reasons assigned the judgment is annulled, avoided and reversed, and there is now judgment in favor of plaintiffs, Jesse L. Peterson and the American Insurance Company, and against the defendants, Daniel E. Bivins, Jr., and the Factory Mutual Liability Insurance Company, in solido, for the sum of $339.64, together with legal interest thereon, from date of judicial demand, and for all costs.
GLADNEY, Judge ad hoc, recused.